UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DONNICE ROBERTS, Individually, and as NEXT FRIEND of JOHNNY and JANIE DOE, minors<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL GEOGRAPHIC SOCIETY; a District of Columbia Corporation; FOX CABLE NETWORKS, INC., a Delaware Corporation; and FOX ENTERTAINMENT GROUP, INC., a Delaware Corporation,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § | CAUSE NO. 6:12-cv-839 |

## PLAINTIFFS' ORIGINAL COMPLAINT

1. Plaintiffs bring the following claims against Defendants and respectfully state:

## PARTIES

2. Plaintiff Donnice Roberts, is a resident of Carthage, Texas. Mrs. Roberts' son, Johnnie Doe, is 6 years old. Mrs. Roberts' daughter, Janie Doe, is 13 years old. Both children reside with their mother and are also Texas residents.

3. Defendant, National Geographic Society, is a Washington, D.C. based corporation and can be served by serving its Registered Agent, Mr. Adam Leipzig, 9100 Wilshire Blvd., Suite 425E, Beverly Hills, CA 90212.

4. Defendant, Fox Cable Networks, Inc. is a Delaware Corporation and can be served by serving its Registered Agent, CT Corporation System, 818 W. Seventh St., Los Angeles, CA, 90017.

5.      Defendant, Fox Entertainment Group, Inc., is a Delaware Corporation and can be served by serving its Registered Agent, CT Corporation System, 818 W. Seventh St., Los Angeles, CA, 90017.

## VENUE AND JURISDICTION

6.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because this controversy is between citizens of different states. In addition, the amount in controversy is in excess of $75,000.00 U.S.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) & (c), because Defendants are subject to personal jurisdiction in this district and are therefore "residents" of this district.

## FACTS

8.      Staff Sergeant Kevin Casey Roberts, is Donnice Roberts' late husband and the father of Johnnie and Janie Doe. Sergeant Roberts enlisted in the United States Army in November, 2001, determined to serve his country in the aftermath of the terrorist attack on America on 9-11-2001. Sergeant Roberts served two tours of duty in Iraq, and was serving a tour of duty with the 101st Airborne Division, 4th Brigade, in Khost, Afghanistan in 2008.

9.      On May 7, 2008, Sergeant Roberts was operating a Humvee performing security services for a military convoy near Khost, Afghanistan. It was the last mission Sergeant Roberts was to perform before going home to attend his grandmother's funeral. While he had the opportunity to decline the mission and leave Afghanistan, he chose to go on the mission and stay with his men. During the mission the Humvee was struck by an Improvised Explosive Device. The IED destroyed the vehicle and five service members, including Sergeant Roberts, were seriously

injured. The injured were evacuated by helicopter to the nearest field hospital. Tragically, Sergeant Roberts did not survive his wounds and died serving the country that he loved.

10. Sergeant Roberts was awarded the Bronze Star and the Purple Heart for his service, along with numerous other decorations arising from his two tours of duty in Iraq and his tour of duty in Afghanistan. His body was returned home to East Texas and he is buried near Center, Texas. His widow, Mrs. Roberts, and her two children grieved Sergeant Roberts' death and are tremendously proud of his service to America.

11. Approximately one year after his death, Mrs. Roberts received a phone call from a military service member stationed in Germany. The service member reported that he had just seen a documentary on the Armed Forces Network, broadcast in the German language, which depicted Sergeant Roberts' dead body, and included an image of Donnice Roberts and her two minor children. Until this phone call, Mrs. Roberts had no idea there was any video footage related to her husband's death, that her image or her childrens' image appeared in any documentary, or that any such documentary even existed.

12. Mrs. Roberts was surprised at this news and investigated further. The documentary, "Inside Afghan ER", was produced and distributed by the National Geographic Society. The documentary was further promoted and distributed by Fox Cable Networks, Inc. and Fox Entertainment Group, Inc. through the cable network NatGeo and its affiliated websites.

13. The documentary included images of Mrs. Roberts and her two minor children. The image came from a family trip to Disney World. Based upon information and belief, it appears the subject photograph was taken from Sergeant Roberts' personal laptop after his death and without any permission from the Roberts family. Mrs. Roberts was very disturbed that her image, and more importantly, her children's image would be broadcast around the world without their knowledge or

permission. This is particularly true given the fanaticism associated with jihadist determined to kill Americans, including American women and children.

14. The documentary was widely distributed throughout the world and was submitted and won a contest for the best documentary in Asia. Mrs. Roberts contacted the National Geographic Society to obtain a copy of the documentary and to retrieve the family photo. She was told that she would be required to sign a release before the Society would provide her a copy. Mrs. Roberts refused to sign a Release.

15. Defendants have worked in concert to film, edit, produce, distribute, and sell the documentary "Inside Afghan ER." Moreover, these entities jointly and in combination own and operate the NatGeo cable network and related websites, through which they have further promoted and aired the subject documentary. These entities have each enjoyed a financial and business benefit associated with the distribution of this documentary.

16. None of the Defendants were ever given permission to use the Plaintiffs' likeness or image in the subject documentary film.

## **CAUSE OF ACTION FOR APPROPRIATION OF NAME OR LIKENESS**

17. Defendants appropriated the likeness of Mrs. Roberts, and her two minor children when they placed their image into the documentary, "Inside Afghan ER."

18. The documentary makes clear by context and editing that the images depicted are those of Sergeant Roberts, his wife, and two young children. Thus, Plaintiffs can be easily identified from the documentary.

19. Defendants have distributed the documentary world-wide, entered the documentary in various film competitions, sold the documentary for profit, and have enjoyed significant financial benefit.

20. Plaintiffs suffered mental anguish, shock, and sadness as a result of their unauthorized appearance in a documentary depicting the death of Sergeant Roberts and exposing the image Mrs. Roberts and the Roberts children to the world. Moreover, Mrs. Roberts has fears and concerns that her minor children are depicted as the children of a warrior in the war on terror, which is fought by fanatic, radical individuals who have shown a propensity and desire to kill Americans, including women and children.

21. Plaintiffs' damages were proximately caused by Defendants' unauthorized use of their name or likeness.

## ACTUAL DAMAGES

22. Plaintiffs have suffered mental anguish in the past and will continue to suffer mental anguish in the future associated with the unauthorized use of their name or likeness.

23. Plaintiffs seek economic damages for the loss of the value of the exclusive use of their own name or likeness and for unjust enrichment to Defendants.

24. Plaintiffs' actual damages were proximately caused by Defendants' unauthorized use of their name or likeness.

## EQUITABLE RELIEF-PERMANENT INJUNCTION

25. Plaintiffs do not believe any family member of a killed or injured service member should be exposed to the unauthorized use of their image for a third party's financial gain or use. Plaintiffs have suffered an irreparable harm and the economic damages available are inadequate to remedy the harm caused.

26. The hardship imposed upon military family members resulting from the risk of the unauthorized publication of their likeness around the globe by virtue of the service of a loved one

to the United States of America, greatly outweighs any hardship the equitable relief sought would impose on the National Geographic Society.

27. The equitable relief sought is appropriate and warranted. Moreover, the general public will be well served by the equitable relief sought as a means of providing further assurance of privacy for the families of those serving in the military of the United States of America. More specifically, those Americans who have already sacrificed for their country as a result of their family member's service will also be well served by the equitable relief sought.

28. As such, Plaintiffs seek equitable relief in the form of permanent injunctive relief, enjoining the National Geographic Society, Fox Cable Networks, Inc., or Fox Entertainment Group, Inc., from further airing, web-casting, or otherwise marketing the documentary "Inside Afghan ER" so long as it includes Plaintiffs' unauthorized likeness or image. In addition, Plaintiffs seek injunctive relief enjoining Defendants from engaging in the practice of using military family members' image, name, or likeness for commercial purposes without their express, written permission. The enforcement and placement of this permanent injunctive relief will honor Sergeant Roberts and is an appropriate equitable remedy for the Defendants' unauthorized conduct. Moreover, this injunctive relief will prevent any other future military family member from a similar situation.

## CLAIM FOR PREJUDGMENT AND POST-JUDGMENT INTEREST

29. Plaintiffs herein claim interest in accordance with Texas Finance Code §304.001 *et seq.* and any other applicable law.

## JURY DEMAND

30. Plaintiffs request that a jury be empaneled to try all fact issues in this case.

## **PRAYER**

31. Plaintiffs pray that Defendants be cited to appear and answer herein and upon final hearing of this cause, Plaintiffs have judgment against Defendants for the damages described herein, obtain the equitable relief sought, attorney's fees, costs of suit, pre-judgment and post judgment interest as permitted by law, and for such other relief to which Plaintiffs may be justly entitled in law and/or equity.

Respectfully submitted,

/s/Jeffrey T. Embry
Jeffrey T. Embry
State Bar No. 24002052
Attorney-in-Charge
HOSSLEY &EMBRY, LLP
320 S. Broadway, Suite 100
Tyler, Texas 75702
Ph.   903-526-1772
Fax. 903-526-1773
jeff@hossleyembry.com

ATTORNEY FOR PLAINTIFFS